[October Term, 1927]

BOARD OF COUNTY COMMISSIONERS v. MASON,
ET AL.

(No. 1332; February 15, 1928; 264 Pac. 93)

2

*Kinkead, Ellery & Henderson, Roderick N. Matson* and *C. P. Plummer,* for appellants.

*O. O. Natwick,* County Attorney,. for respondent.

4

KIMBALL, Justice.

The Platte County State Bank, a depository of moneys of Platte County, was closed by the State Bank Examiner February 16, 1923, and passed into the hands of a receiver. The board of county commissioners of Platte County brought this action against the seven defendants, sureties on the bond of the bank as such depository. The amount claimed, and for which with interest the plaintiff obtained judgment, was $5978, the amount of county moneys on deposit in the bank when it closed. The defendants appeal.

Our statutes in regard to deposits of public moneys (Ch. 183, Secs. 2949-2976, W. C. S. 1920), require that they be deposited in banks that have been designated as depositories by the proper governing boards, and to secure such funds the statute applicable in this case provides (Sec. 2967, C. S. 1920):

"For the security of the funds so deposited under the provisions of this chapter, the proper treasurer shall require all such depositories to give bonds for the safe keeping and payment of such deposits and the interest thereon, which bonds shall run to the proper county, city, town or school district, and be approved by the proper governing board of such county, city, town or school district, and

conditioned that such depository shall on the first Monday of each January, April, July and October of each year, render to the proper treasurer, and to the proper governing board of the county, city, town or school district, a statement in duplicate, showing the several daily balances, and the amount of public moneys held by it during the preceding three months, and the amount of the interest thereon, and how credited, and for the payment of the said deposits, and the interest accrued thereon, as herein provided, and when demanded by the proper treasurer on his check, order or demand at any time, and generally to do and perform whatever may be required by the provisions of this chapter, and a faithful discharge of the trust reposed in such depository. The said bond in substance shall be similar, or as near as may be, to the bonds required of state depositories, and when the penalty thereof exceeds the sum of five thousand dollars, such bond shall be furnished by some responsible surety company authorized to do business in this state. No county, municipal or school district treasurer shall have on deposit in any bank at any one time more than one-half of the penal amount named in its said bond in all cases where private bonds furnished, nor more than ninety per cent of the amount of all other bonds nor more than one-half of the paid up capital stock and unimpaired capital stock and surplus of such bank.''

By Section 2969 it is provided, among other things, that:

''During the time that funds cannot be deposited in the banks entitled thereto under the provisions of this chapter, the proper treasurer shall hold said deposits in safe keeping, and shall be liable on his official bond for such funds so held.''

The bond in question here, after the recital that the bank, as principal, and the defendants, as sureties ''are held and firmly bound unto the county of Platte in the State of Wyoming, in the penal sum of five thousand ($5000) dollars, to the payment of which sum, well and

truly to be made, we bind ourselves," etc., is conditioned as follows:.

"WHEREAS, The above bounden, THE PLATTE COUNTY STATE BANK, was designated as a County Depository by the County Commissioners of the County of Platte in the State of Wyoming, on the 4th day of April A. D. 1922;

NOW, THEREFORE, The conditions of this obligation are such, that if the said bounden, THE PLATTE COUNTY STATE BANK, and its officers shall well and truly perform all the duties of its and their offices of Depository of the County of Platte, in the State of Wyoming, as is or may be prescribed by law, and shall, with all reasonable skill, diligence, good faith and honesty, safely keep and be responsible for all funds coming into their hands, and deposited in the said bounden THE PLATTE COUNTY STATE BANK, by its Treasurer of said County, and pay over without delay to the person or persons authorized by law to receive the same, all moneys which may come or be deposited in the said THE PLATTE COUNTY STATE BANK, by virtue of its being designated depository, and shall well and truly deliver to his successor in office all moneys deposited by said officers of the said County of Platte, in said THE PLATTE COUNTY STATE BANK, then the above obligation to be void; otherwise to remain in full force and effect."

Attached to the bond is the following writing, signed by the seven sureties:

"In condition that the Board of County Commissioners of Platte County, Wyoming, accept the attached bond of THE PLATTE COUNTY STATE BANK of Wheatland, Wyoming, we, the undersigned sureties named therein, agree in case of insolvency of said bank to pay to the County Treasurer of Platte County, Wyoming, on demand, all moneys belonging to said Platte County, without requiring said Platte County to first exhaust its remedies for the collection of said funds against the said bank, or in the event of insolvency, the receiver thereof."

We are required to construe the bond for the purpose of deciding the extent of the sureties' liability. There are three possible conclusions: First, as contended by the plaintiff and held by the judgment, that the sureties are liable for the total amount of county moneys on deposit, though more than the penalty of the bond; second, as contended by the sureties, that they are liable for only $2500, one-half the penalty of the bond; third, as secondarily contended by the sureties, that they are liable for no more than $5000, the penalty of the bond.

In contending in support of the judgment that the sureties are liable for an amount in excess of the penalty of the bond, the plaintiff relies on the writing attached to the bond, claiming that it shows an intention to do away with the penalty of the bond as the limit of the sureties' liability and to leave them obligated to pay without limit any amount that might be deposited with the bank. This construction might be justifiable if we were considering the attached writing as evidence of an independent contract that superseded the bond itself. But it cannot be so considered. We think we must construe the two writings together, and when so construed we believe they do not show an intention to do away with the limit of liability as fixed by the penalty of the bond.

While the conditions of the bond are not stated in the words of the statute, there can be no doubt that the bond was intended as a depository bond authorized and required by the statutes as the basis for designating the bank as a depository of public funds. These statutes contemplate that the bond shall be in a fixed penal sum, and for this there are at least two good reasons that apply in the case at bar. First, to comply with the statutory declaration that when the penalty exceeds $5000, the bond shall be signed by some responsible surety company, and, second, to make it possible for the treasurer to comply with the provision that he shall not have on deposit at any one

8

time more than one-half the penal amount named in a "private" bond. Sec. 2967, supra.

The bond in the case at bar names a penalty of $5000, the statutory limit for a bond of that kind. To adopt the construction for which the plaintiff contends, we would have to say that the writing attached to the bond shows not only the intention of the sureties to assume an unlimited liability, but also the intention of the board of county commissioners to violate provisions of the statute that the legislature deemed important for the protection of county funds.

The writing attached to the bond does not purport to supersede the bond itself, but on the other hand clearly contemplates that the bond shall be accepted. It does not purport to change or eliminate the penalty of the bond, unless we give that effect to the promise to pay "all moneys belonging to said Platte County." The parties were stipulating as to what would happen "in case of insolvency" of the bank. The sureties were promising, in that case, to pay on demand, waiving their supposed right to insist that the county should exhaust its remedies against the bank, or its receiver, before looking to the sureties. We believe the additional stipulation was not intended to control as to what the sureties would pay, but only as to time when they should pay. When they referred to "all moneys belonging to said Platte County," they made use of substantially the same phrase used several times in the bond. Construing the two writings as one instrument the phrase as used in the added writing must be taken to mean all moneys for which the sureties were liable under the terms of the bond. This construction not only reconciles the provisions of the contract as a whole, and makes them conform to the statutory regulations, but also, we think, makes the contract speak the real intention of the parties.

The statute (Sec. 2967, supra) applied to this case made it the duty of the county treasurer not to have more than $2500 on deposit in the bank at any one time. The sureties contend that this amount is the limit of their liability under the bond. On the point thus raised there is some conflict in the decisions.

The bond runs to the county, not to the treasurer, and this controversy is between the county and the sureties, not between the treasurer and the sureties. It is argued, however, that, because the statute (Sec. 2969, supra) makes the treasurer liable on his official bond for the safe keeping of funds that cannot be deposited in banks entitled thereto, the controversy in effect is one between the sureties on the depository bond and the sureties ·on the official bond of the treasurer. And it is contended that the county's remedy for the loss of the amount on deposit in excess of $2500, is by suit on the treasurer's bond. A similar contention was made in Buhrer v. Baldwin, 137 Mich. 263, 100 N. W. 468, where, although the suit was in the name of the treasurer, it was held to be in reality a suit by the county, and said, among other things, that:

"The fact, if it be a fact, that the people of the county of Wayne have double security for this money, is a circumstance of no legal importance. If they are so secured, the officials of that county, and not this court, have the right to determine to which security they will first resort."

In this case, it is immaterial whether or not the treasurer was liable on his official bond for the amount in question.

We have, then, a bond to the county with a fixed penalty of $5000, and a statute directing that the treasurer have on deposit no more than one-half the amount of the penalty. The question is, whether the statutory direction to the treasurer was exclusively for the protection of the

county, or, in part at least, for the protection of the sureties. Detroit v. Weber, 26 Mich. 284, 290; Board of Supervisors v. Otis, 62 N. Y. 88.

As said in Board v. Gray, 61 Minn. 242, 63 N. W. 635, a bank designated as a depository, becomes a financial agent of the county to keep and pay out on proper demand the public funds, and its liability is not conditional on the fidelity of other public agents or officers. State v. Pederson, 135 Wis. 31, 114 N. W. 828. The depository's relation to the county is not unlike that of a public officer, and it is commonly held that a surety on an official bond is not discharged by violation by another public officer of a statute enacted for the benefit of the government. Brandt on Suretyship (2d ed.) Secs. 673-675; Commissioners v. Sheehan, 42 Minn. 57, 43 N. W. 690, 5 L. R. A. 785; Hart v. United States, 95 U. S. 316, 24 L. Ed. 479.

The rule which we think applicable here is well stated in Board v. Gray, supra:

"The fair and reasonable construction of the statute is that the limitations imposed upon the treasurer as to the amount of the deposit are intended for the benefit of the public, not for the protection of the sureties. They protect themselves by fixing a limitation in their contract beyond which they will not be liable. The law undertakes, in addition to the bond, further to safeguard the public funds by placing limitations upon the authority of its officers in depositing such funds with its designated financial agent; and although the former, by mistake or otherwise, disregard the limtiations, yet the latter holds the excess as such agent by virtue of his designation as a depositary of the public funds. When suit is brought on his bond to recover such funds, neither he nor his sureties can be exonerated from liability for any part of the public funds deposited with him, because the treasurer did not observe the limitations of the law."

The decision in Board v. Gray was recently approved and followed in Goodhue County v. Nosier, (Minn.) 212

N. W. 948. Other cases involving depository bonds, where it was held that the limit of the sureties' liability was the penalty of their bond, and not the amount authorized to be deposited with the bank, are: State v. Pederson, supra; U. S. Fidelity & Guaranty Co. v. Naylor, (C. C. A.) 237 Fed. 314, 321; Wyoming v. Trust & Guaranty Co., 9 Oh. App. 225, reversing s. c. 19 Oh. N. P. (N. S.) 385; Scotts Bluff County v. First Nat. Bank, (Nebr.) 212 N. W. 617; Gregg v. Hinkle, 29 N. Mex. 576, 224 Pac. 1025. The United States District Court for this district in Cheyenne v. Maryland Casualty Co., 13 Fed. (2d), 401, 405, applied the principle which we approve. On the general proposition that the surety on such a bond cannot be relieved from liability because of the unlawful acts of public officers, see U. S. Fidelity & Guaranty Co. v. State, 81 Kan. 660, 106 Pac. 1040, 26 L. R. A. (N. S.) 865.

The main argument in support of the contention that the sureties are liable for only one-half the penalty of the bond is that the statutes forbidding the deposit of more than that amount must be read into the bond. We said in Black & Yates v. Lumber Co., 32 Wyo. 248, 258, 231 Pac. 398, that parties presumably enter into a contract in the light of existing principles of law. Statutes that affect the rights of the parties need not be written into the contract in order to become a part of it. But we are of opinion that the statutes limiting the amount of deposits to be made by public treasurers were not enacted for the purpose of affecting the liability of sureties on depository bonds. The sureties assume an obligation limited by the penalty of the bond, and must be held to do so with full knowledge that the obligee, the county, does not guarantee that the treasurer would follow the statute in making deposits. See: Stoeckle v. Armstrong, 8 Del. Ch. 150, 173, 38 Atl. 1059, 1065.

Among the cases cited by defendants there are a few that seem to require special notice. They are Fremont County

v. Fremont County Bank, 138 Ia. 167, 115 N. W. 925; Re State Treasurer's Settlement, 51 Nebr. 116, 70 N. W. 532, 36 L. R. A. 746, and Yellowstone County v. First Trust & Sav. Bank, 46 Mont. 439, 128 Pac. 596, the cases usually cited in opposition to the rule we approve, and National Surety Co. v. Lyons, (C. C. A.) 16 Fed. (2d) 688, where the rule that defendants seek to invoke is held to be established by decisions of the Supreme Court of Nebraska. The Iowa case may be distinguished because of the statute in that state. The statute in force when Fremont County v. Fremont County Bank, supra, was decided, provided that the amount to be deposited by the county treasurer should be fixed by resolution of the board of supervisors, and that before such deposit was made, the bank should file a bond in double the maximum amount permitted to be deposited "conditioned to hold the treasurer harmless from all loss by reason of such deposit or deposits." Sec. 1457, Supp. Code of Iowa, 1907. The cases of Re State Treasurer's Settlement and Yellowstone County v. First Trust & Sav. Bank, supra, did not involve any question of the liability of the sureties on the depository bonds. Since the decision of Scotts Bluff County v. First Nat. Bank, (Nebr.) 212 N. W. 617, it is at least doubtful whether National Surety Co. v. Lyons, (C. C. A.) 16 Fed. (2d) 688, ought to be accepted as stating correctly the law of Nebraska. Conceding, however, that some or all of these cases are opposed to our view, we must decline to follow them.

It is our opinion that the plaintiff should have had judgment for the amount of the penalty of the bond and interest. The case will be remanded to the district court with instructions that the judgment be modified by reducing the amount to conform to this view.

Judgment modified.

BLUME, Ch. J., and BROWN, District Judge, concur.